Yes, Your Honor. We'll hear from you first. Thank you, Your Honor. May it please the Court, my name is Matt Willis. I'm here on behalf of Dunbar Mechanical Contractors. They were the defendant, cross plaintiff at the trial court. They are here, the appellant. Obviously, if things did not go the way we had anticipated or hoped in the trial court, we wouldn't be the appellant. We're here today on a grant of summary judgment that was originally filed as a 112 motion and converted by the court properly to a rule 12 motion, I mean to a motion for summary judgment. And summary judgment was granted by the trial court. This boils down to, I'm going to say two issues to the court, although others have been briefed. And I will point out that the issues are fairly narrow as the briefs are not long. We appreciate that. As did I, frankly, Your Honor. But the issues really are the 15% requirement for a service disabled veteran's small-owned business. Does that 15% have to be achieved prospectively or prospectively? In other words, do we evaluate whether or not they have substantially complied with the FAR, with the Code of Federal Regulations, as to doing their 15% when the contract is done? Or can we look at it as a snapshot on the front end and say, it appears that they will not make their 15% the contract is void ab initio? Your Honor, we don't have any case law on this point. Frankly, I have worked in this area of law for a while, and I would have thought that this argument would have been heard before the federal circuit, given its exclusive jurisdiction over Armed Services, Civilian Board, the Court of Federal Claims. So I also can't find any case law, not only in the Eighth Circuit, but in any circuit, including the federal circuit. As far as authority, what we have is the wording of the regulation itself, and we have, again, I agree with counsel that it is not binding, but I think it is persuasive. The Government Accounting Office's report that we've referenced in our brief, wherein they say that compliance is evaluated at the end of performance. We think that that is consistent with the language of the regulation in that a small service, an SDVOSB, I will always get that wrong, is basically prohibited from paying more than 85% of the contract price to a non-similarly situated contractor. In other words, to a non-SVSDVOSB. However, there are exclusions. One of those is the material costs don't count. And I will point out to the language of the statute, paid. You can't pay to that subcontractor more than 85% of what you were paid. Paid is a past tense. It isn't saying what you will be paid, what you anticipate to be paid, what you should be paid. It's what you are paid, with some exclusions, such as for materials. Which makes perfectly sense in the construction world because as soon as a contract is issued, there's probably going to be a change of order. And in a contract like this, which I agree, although there was some confusion over it in the trial court, is a firm fixed price contract. It is a firm fixed price unit based contract, not a lump sum contract. In other words, the total value of this contract, what will be paid by the government, cannot be correctly ascertained upon the award of the contract. And then what was the contract issue? The work was subcontracted, right? A large part of the work was subcontracted. Was it a large part or was it all the work? The subcontract was for a scope of work in excess of 85%. But didn't it also say all the work? Yes, Your Honor, it does say that. I wonder if that's important. I know that's what I will testify to as to that. But it does say all the work. But I will also say that the subcontract. Well, is that important? Because does that make this different than a case where we don't know how the work is going to be portioned out over the job and whether it will add up to 85% might not be knowable at the beginning. But if 100% of the work is going to be done by a non-qualified outfit? Your Honor? No. Maybe that's different. What do you say to that? I don't think so because, well, for two or three reasons, all in conjunction. One, the proof by the affidavit, which was properly submitted in response to the motion for summary judgment, it was the intention of Dunbar to complete its 15%. And, of course, the work in a government contract is not necessarily the using of the shovel. There's other elements of work, which Dunbar had bid on and was already obviously self-performing, inspections, quality control representative, these things. In other words, there are management-type work that is qualified for the 15% that is not running the drag line in the canal. And also paragraph 12, section 12 of the subcontract allows Dunbar to alter or eliminate any part of hardening the subcontractor's work. The affidavit of Mr. Dunbar was we were doing this to learn this business. We were already a government contractor. This was another area of construction we wanted to get into. And so we found someone that could teach us to do this part of the business. And they were going to help us figure out our 15%, what we needed to do to be compliant. We have this section 12 of the subcontract, which allows us to make that amendment as necessary. Your Honor, do I wish that the wording used isn't the wording that was used? Of course I do. It makes my life harder. But I don't believe that it is prohibitive under these circumstances because I don't think no matter what that subcontract says, I think what matters is where we are at the end of the day. When the subcontract has been fulfilled, when the prime contract, including any and all modifications or amendments have been fulfilled, when the actual units of work have been evaluated and paid, I don't think that you can take this contract and say it's void ab initio because it allocates too much to a subcontractor on the front end. That's not what the government accounting office is doing. It's not what paid means. Paid is a past tense verb. You have to look at this after completion. You can't look at it from the front. So how would this play out under your view? What would Hanover do? Well, Hanover had options under their bond. They could, of course, just pay the penal sum, just say we don't want to be involved with you people anymore. Take the penal sum and go. That's one option. But do they have any remedy then at the end of the line? Or are they out at that point? Well, if they tendered their penal sum, then there would be a mutual release. Of course, another option they had under their bond is they could undertake to self-perform the work, the Hanover takeover the work, with another contractor or with their principal, Harding, who I don't think anyone really wanted back on the job, including Hanover. But they could have gone out and gotten another subcontractor who was qualified. If they were that concerned about this 85 percent, 15 percent split, if they didn't believe that Dunbar was going to step in and do their 15 percent, as Mr. Dunbar had said and as he had arranged with Harding, they could have gone out and got an SDVOSB replacement subcontractor under the terms of their bond and fulfill the work with that compliant subcontractor. And then all the work, 100 percent, would have been done by a qualified entity. They had options. They had options which did not subject them to continuing to do something which they claimed to have felt was inappropriate or illegal. They took the easiest option out, which is just to deny it, and here we are. But they had options by which they could be completely compliant with all federal laws and regulations. Counsel, I'm interested in the language in the regulation that says the cost of materials are excluded and are not considered to be subcontracted. Yes, Your Honor. And I couldn't find where anybody really discussed that, whether that's relevant. And I also couldn't find where there was really any description as to exactly what this work involved. In other words, was it strictly dirt work where there were no materials involved? Were there culverts and grass seed and any number of kinds of materials? Sure. And if that's included under the subcontract, what happens then when we subtract the cost of materials? Does that impact the, I think the district court said this ended up being like 87.6%. If you subtract materials, does that affect that? And would that make the subcontract compliant? Your Honor, the truth is it was not fleshed out in the trial court. It has not gotten to the stage at which that analysis had been done or in our view could be done as you have to see what you spend on materials once you get to the end because you don't know whether you've used enough of those and those are on a unit cost basis too. But certainly other things besides dredging dirt work was involved, including landscaping, clearing, grubbing. It was largely a dredging project. But yes, to answer the court's question, other things were involved. But we can't evaluate what impact those other things had. Well, is that in the record? Did anybody suggest that to the district court? That wait a minute, the regulation says the cost of materials are excluded and there weren't materials involved. Here's what they would have been and this is what they cost. I believe that the issue of materials being excluded from the analysis was suggested to the district court in the summary judgment pleadings. I don't have those pleadings before me. I only brought the briefs and part of the appendix. However, as far as a breakdown as to what those were or would have been, how that actual math would have broken out at that moment in time was not presented to the district court. Again, I don't believe we can do that math until the end. Essentially, this isn't a math problem that can be addressed on the front end regardless. It's a math problem that we have to address on the back end. At summary judgment, doesn't somebody have to come forward with some kind of presentation of fact that suggests that this is going to be a factual issue that remains to be determined? Is it enough just to say without any kind of evidentiary support that there are materials, significant amount of materials that are involved in this? We mentioned the materials. We did not raise that as one of the facts. Our facts that we relied upon was the intention of Dunbar to actually perform its 15% in compliance with the regulation and consistent with the ability that it left itself to do so under the subcontractor party. Your Honor, I'm happy to answer any follow-up questions, but otherwise I would reserve my remaining three minutes for a vote. You may. Thank you, Your Honor. Mr. Meekham, we'll hear from you. Thank you, Your Honor. May it please the Court. Dunbar and Harding schemed to take improper advantage of a program designed to enable service-disabled veterans to start and grow construction businesses. And in doing that, they made misrepresentations to the government, to Hanover, and to the American taxpayers. The fact that they, after having been exposed in these misrepresentations, have come to the Court for relief… Where's the evidence of a scheme? Well, the prime contract is hand-in-glove with the subcontract, and that they're entered into on the same day, and that shortly thereafter, not only do you have this hand-in-glove relationship where literally, if you read the two documents, all of the work is subcontracted. Then Dunbar hires Greg Harding, the sole owner of Harding Enterprises, to manage the project under a separate employment agreement. So essentially here you have Greg Harding either directly or through his company doing the project alone. What's wrong with that? Because it's in violation of the… Well, the regulation aside, just as a matter of construction business practices, what's wrong with that? Oh, there's nothing wrong with that in terms of getting the work done. What's wrong with it is this project was set aside by the government for a service-disabled veteran, and because it went to Dunbar, some other service-disabled veteran who actually intended to do the work themselves or at least enough of it to qualify under the regulations didn't get that opportunity. The point that opposing counsel has spent his time on is his conception that this sort of analysis as to whether or not this project complied with the regulations can't be done until the project is done. That's their basic position. There's seven problems with that argument. The first, he admitted, is there's no authority for it, that this issue of people taking… That's an open question, isn't it? What do you mean by no authority for it? He says their text is in the past tense, and the GAO agrees with him. And both those things are incorrect, but on the issue of the lack of authority, this is a common issue that is commonly litigated, whether a set-aside contract was properly executed, and the fact that these contracts, when they're litigated, are often like this, have been defaulted in the middle of the project, which is how it comes to everyone's attention, and the fact that no one else has ever made this argument successfully in a court, is some suggestion that it's not… Have you found any authority in rejecting the argument? I haven't found any authority where anyone has the audacity to make the argument. All right. But let's talk about the language. Okay. As the son, grandson, husband, and brother of schoolteachers, I feel obligated to say that a sentence can only have one tense. The verb in this sentence is will not, which is at the beginning of the sentence, meaning what the contractor will not do. In other words, will not pay more than 15% or more than 85% to other non-SDVOSBs. The sentence has to be in the future tense because the future tense is the tense of promises, which is what this regulation is doing. It's saying when you get the contract, here are the promises you make. The word paid in the sentence is not a verb. The word paid in the sentence is a participle serving as an adjective that is describing the money we're talking about, the money you can't pay more than to other people who are not situated. An adjective can't have a verb, can't have a tense. A sentence can't have more than two tenses. So the grammatic rules of the sentence don't constrict us to, well, we have to wait until all the money has been paid and do an accounting at the end. That's not the reality. So let's look at the GIO report. But just so we're clear on the sentence that you're referring to, what's the citation? It's 13 CFR 125.6. Yeah. Right. B. B. Three. In the case of a contract for general construction, it will not pay more than 85% of the amount paid by the government to it to firms that are not similarly situated. So the will not pay. Why do you think it doesn't read something like the contract shall not provide for payment of more than 85%? Because I think it's trying to serve two purposes. One is an initial evaluation of the relationship between the subcontract and the contract because the contracting officers, and the GIO report discusses this expressly, should evaluate that issue, but also it has to encapsulate the performance of the contract. You might have a contract and subcontract that say, well, we're going to do this work 50-50, but in fact that doesn't occur. So it can't be limited to the contract. The argument that opposing counsel is making would require this sentence to be in the future perfect and require the word paid to be changed to the amount that has been paid or to have been paid by the government. You need a future perfect sentence here for counsel's argument to make sense. Now, are you quoting the 2016 regulation? No, I'm quoting here the version of the regulation prior to the change at the end of 2019. So what about the regulation that was in effect when the contract was entered into? Yes, that is the version I'm quoting. And there was a change to this regulation that went into effect in December of 2019, although that revision did not change this provision, which is important, and we'll talk about it shortly. But was there another change after the version that was in effect December 2013? I thought there was another change between 2013 and 2019, and the district court was talking about a 2016 version. To the best of my knowledge, Your Honor, the sentence we're discussing was the sentence that was in effect at the time the contract was made and performed. Okay. Now, Dunbar relies on this GAO report, and what the GAO report is, is the GAO, and I recommend everyone to read it if you think reading surety bonds is thrilling. A GAO report is a white-knuckled, nonstop thrill ride. But what the GAO was doing was contracting officers in set-aside projects like this one are tasked with monitoring compliance with regulations like the 15% we're talking about. And the GAO was studying how good contracting officers are at doing that. And so to make that study, they sampled 10 government projects. And the quote that counsel is relying on is a partial quote from one sentence from the top of page 3 of that report, wherein the GAO is simply describing their sampling technique. They're saying, here's the reason we picked jobs that were already done for our report. That's all it is. It's not any broader discussion of how these regulations are interpreted or enforced or evaluated. And if we read the report in its entirety, we find that the opposite is true. I commend you to look at table 2 on page 8, which is entitled Partnership Responsibilities. It's a listing of what these contracting officers are supposed to do when they're evaluating these reports. And one of the bullet points that the contracting officers are being graded on in this study is whether they documented and assessed if Offeror Dunbar could comply with subcontracting limitations before awarding contract. And then if you look further at page 8, and they found, by the way, that only 4 of the 10 contractors did this. The upshot of this report is that contracting officers aren't very good at enforcing these regulations and monitoring them. And if you also look at page 8, they found two contracting officers they lauded for providing or requiring regular updates from the general contractor of the subcontracting and how much work was being done and whether these things were being enforced. So if you read the report as a whole, it's a story of how grading contracting officers for enforcing these regulations, and you get a better grade if you do a couple of things. One, you're supposed to, at the beginning, do an assessment of this general contractor who is seeking the bid, and determine do they have the ability to do the work, and do they have contracts set up, and you should read the subcontracts to determine if they're going to self-perform enough of the work. Had that been done in this case, they would have found that the hand-in-glove subcontract prime contract didn't satisfy this requirement. The contract never would have been awarded. Before you go to your next point, let me take advantage of your linguistic expertise and give you what I think is the version of 125.6 that was in effect in December of 2013 and have you analyze it. It says an SDVO-SBC prime contractor can subcontract part of an SDVO contract, provided in the case of a contract for general construction, the SDVO-SBC spends at least 15% of the cost of contract performance incurred for personnel on the concerns employees or the employees of other SDVO-SBCs. Are you familiar with that regulation? Yes, Your Honor. I believe that maybe it's 4852, either 219 or 236. No, it's 13 CFR 125.6 B2, effective December 2013. What about that language? As long as the SDVO spends at least 15%, how do you think that language works? Again, Your Honor, it's a future tense. It's what they are promising to do in the future. In order for them to get the contract, they have to promise to do these things. In order to evaluate that promise, the contracting officers should do, according to the GAO, an assessment at the beginning of the project and require regular updates throughout the project. There's nothing in the GAO report or in that language that requires them to wait until the very end. This idea that we wait until the end is also inconsistent with the False Claims Act. We have an organization under the False Claims Act where every payment application that is made in furtherance of a false claim is a separate violation. Now, it would be impossible to reconcile that framework with a system in which we don't evaluate violations until the end of the project. It couldn't at the same time be true that every application is a violation for months and months and months. What would be the violation? According to the relevant law that we cited in the False Claims Act, if a contractor submits a monthly payment application to the government that is in furtherance of a false claim, that's a violation. Every month they do it. What's the false claim in this hypothetical? It would be making a payment application that is claiming that you are in compliance with the CFR, that you're self-performing at least 15% of the work, when in fact that's not true. That just goes back to the original question of whether you have to do it all the way throughout, or whether you can do it by the end of the line. It wouldn't be false if the law allows you to spend the 15% in the last year. We may be saying the same thing. We can evaluate whether or not we are going to self-perform 15% at the front end based on the contract. Construction, especially public construction, is built on schedules, and is built on predictions. So you're saying if the contract provided for spending the 15% at the end, that you could truthfully submit earlier that you're in compliance even though you weren't spending 15% during that earlier period. What about his argument that our contract allowed for changes? That we could substitute out for harding later and so forth. That argument is akin to saying I've been accused of hiring a hitman, but my contract allows me to modify it to have him fix my toilet instead. The fact that this contract, like virtually every contract, especially every construction contract, says it can be changed by mutual agreement of the parties, would be an out for anyone in these circumstances, and it's simply not the case here. If I venture into a contract where I'm subcontracting all of my work away, which by the way is the exact problem this GAO study was commissioned to address, they can't claim, they can't do 99% of the project and be immune from scrutiny merely by claiming on the last day I could in theory. Why should we pay attention to a GAO study on either side? I'm happy to have you not pay attention to a GAO study. Why can't we just read the regulation and look at the contract? And I think you can absolutely do that. In the construction industry, very seldom is the contract price the actual amount of money that changes hands at the end of the day. Your Honor, you can certainly take that approach, but in that approach once again, Could that be the reason that the regulation talks in terms of will not pay? I think as I answered earlier, that is part of the reason, because again we have probably a two-step analysis. One is we look at the contracts and the subcontracts at the beginning of the process, and we want to look as the process goes on at the end, how is in fact the money changing hands? We want to see both. And where you start with the contract, where I have subcontracted out 100% of the work to someone who is not qualified as an SDVOSB, merely to say in the future we might, maybe, could have the right to change it, to bring it into compliance, is not good enough. So do you say it doesn't matter that this is a unit contract because all the units are going to go to Harding? Exactly, Your Honor. The subcontract with Harding says that Harding too will be paid unit prices. So as the work goes up and down in the prime contract, Harding's money goes up and down in the subcontract. And again, the scope of the work doesn't change, and the scope of the work is all work. So if the government says, hey, there's some more dredging that has to be done, we found some rock here that has to be taken care of, and that's going to change your unit price, that change passes right through pursuant to the hand-in-glove subcontract to Harding, and changes Harding's price and changes Harding's scope of work. Did that work involve, so all the work was subcontracted, but did the work as contracted involve the providing of materials? Your Honor, I think the contract and subcontract are silent at that point, but you raised a fair point earlier, which is that if we were able to subtract out materials and then bring it into compliance, Dunbar would have had to put some of that evidence forward at the trial court level, have it in the record before the court, and the argument that we can't do that until the end is disingenuous, because again, they bid this job, so they have some idea of what it's going to cost to do it. They could have put those estimates into the record. They were in the middle of performing the job, so to the extent they had already paid for supplies and materials, they could have put that evidence into the record. To the extent in the middle of the job they had a forecast or a schedule for future work, they could have put that evidence into the job. But given that the record is completely devoid of any evidence about any cost of any materials, this court should not upset the summary judgment based on having or wanting to guess about what materials might cost and how that might affect the percentages. Thank you. Thank you for your argument. Mr. Willis, we'll hear from you in rebuttal. Thank you, Your Honor. I didn't realize I had represented such villains since I left my criminal practice years ago. But I would point out that while the GAO report, it carries no authority of law, but it does give some illustration of a few things which are supportive of our position and certainly not contrary to it. Not only the evaluation at the end, which we pointed out, but also the ability of a contracting officer on the front end or throughout to evaluate compliance to make sure that there would be compliance. They have the ability to do that, whether they choose to do so or not. It's not a requirement. They have the ability to run their own contracts. The fact of the matter is, this is how the contract was run. Clearly, it wasn't a scheme put forth to hide this from the government if the contracting officer, as everyone knows, has the ability on the front end to say, you know, I want to see your subcontracts. I want to see if you can really do this. It's not as if this subcontract was secret or hidden or it was a backdoor memorandum or a handshake agreement in a hallway. This was all available documentation to the government. It wasn't a scheme to defraud anyone. The fact of the matter is, when the value of the contract, the money of it, can change regardless of the work itself, because work, the digging of the ditch, is not the whole value of the contract or the amount to be paid. There are inspectors. There are quality control persons. There is management that can be calculated into that. And therefore, if the units go down, if there's an underrun, then Harding would in fact have been paid less and their percentage would have gone down if there had been an underrun of units. It's not just a perfect... But percentage compared to what? Who's getting another percentage of it? Well, that's what I'm saying. When the district court found that 87.5 or 87.6 percent of the value of the contract would have been paid to Harding, had the units had an underrun, because this was only an estimate... Where did the district court think the other 12.5 percent was going? Well, it's going to Dunbar. There's two parties. It's 100 percent minus the 87.5 that the district court found that Harding would be paid. But if Harding is based on a unit price, their units go down, the fixed amount that would already go to Dunbar sits, and the percentages change. But we can't know that until we find out what happens on an indefinite quantities contract. I would also point out that... I had a point that I thought was just brilliant, Your Honor. Well, you have 45 seconds to think of it. I know. I understand. Perhaps it wasn't as brilliant as I had hoped, but, Your Honor, our position is that you simply can't evaluate this to the end. I remember the subcontract is not... Section 12, if I recall it correctly, is not a mutual amendment of a contract. It gives Dunbar the sole authority to unilaterally modify, change, or eliminate the scope of Harding's work. Which is consistent with Dunbar's supportive affidavit, which says that's what we were going to do. We were going to rely on Harding to figure out how to get our compliance 15 percent. And we had the authority in our specific subcontract to do just that. Thank you, Your Honor.